ALLSTATE FIRE INS. CO., APPELLANT, v. SINGLER, A MINOR, ET AL., APPELLEES.

[Cite as Allstate Fire Ins. Co. v. Singler, 9 Ohio App. 2d 102.]

(No. 9995—Decided January 16, 1967.)

*Mr. Donald A. Fisher,* for appellant.
*Messrs. Rendigs, Fry, Kiely & Dennis* and *Mr. Don Burkholder,* for appellee Jackie Lee Singler.
*Mr. Vernon C. Hoffman,* for appellee John LeRoy Schwier.

LONG, J. This is an appeal on questions of law from the Common Pleas Court of Hamilton County. The plaintiff, appellant herein, is an insurance company authorized to do business in Ohio. The Hunnicutts had a policy of insurance with plaintiff on a building which they owned and which they rented to one John Yasbeck who operated a grocery store on the premises under the name of Camargo Foods, known also as a Parkview Market.

In the operation of the grocery, empty cartons of every description, fruit boxes and other empty containers were placed in the rear of the store, close to the building. The testimony of the defendants is that some of the boxes were against the building and some reached out therefrom for a distance of fifteen to twenty feet.

On May 17, 1961, somewhere around 5:30 p. m., the defendants, who were boys aged fourteen and thirteen years, entered upon the premises in question, lighted a match and set fire to the pile of boxes; and the fire spread to the building of the grocery causing damages in the sum of $6,837.50. The insurance company, under the terms of the policy, paid the owners of the building this sum for which it took a subrogation agreement from the Hunnicutts in order to recover the $6,837.50

from the defendants. The jury rendered a verdict in favor of defendants.

The petition alleged the trespass of the defendants as follows: "That on or about May 17, 1961, the defendants set fire to boxes in the rear of the Hunnicutt property; that the fire from said boxes spread to the roof of the structure and ignited the joists and rafters of the roof of said building"; then follows a prayer for the sum which the insurance company paid to the owners of the property. A motion for summary judgment was filed by the insurance company.

In support of that motion, evidence was offered by plaintiff. The cross-examination of defendant Jackie Lee Singler discloses the following:

"Q. And when you got up to the Parkview Market, what happened? A. We set the box on fire.

"Q. When you say 'we', who do you mean? A. John [John LeRoy Schwier, other defendant] and I.

"Q. And you and John both went in, is that correct? A. Just behind the building.

"Q. And these boxes were sitting where? A. Right behind the building.

"Q. And what, if anything, did you have to start this fire? A. Just a match.

"Q. And then you set that fire, is that right? A. Yes, sir.

"Q. Were there boxes up against the building? A. Yes.

"Q. And were these the boxes you put the match to? A. Yes.

"Q. Well, whose idea was it to put a match to these cartons in back of the Parkview Store? Yours or John's? A. *Both of us.* [Emphasis added.]

"Q. Had you discussed this with John prior to the time you put the match to the boxes back of the Parkview Store? A. Yes.

"Q. Well, before you put the match to the boxes in back of the Parkview Store, did you and John have any conversation about setting this fire? A. No, just thought we would go over and light it."

The defendant John LeRoy Schwier was cross-examined as follows:

"Q. Did you see Jackie Lee Singler light the match and put it to the boxes? A. Yes, I did.

"Q. Well, between the place where the boxes were located

and the building, was there an area of any size? A. I think it was approximately a foot between the boxes and the building.''

Section 2311.041 of the Revised Code is the statute which provides for the granting of a summary judgment. In the case at bar there is no dispute as to the facts; there is no issue to present to a jury. The defendants filed no affidavits or gave any testimony indicating any response to the granting of the motion.

When the case went to trial, defendants offered testimony to the effect that their conduct was that of teenagers of the same age, education and experience; that they could not form an intent to do wrong. A psychiatrist was even put on the stand to show that one of the defendants was mentally one year or a little under his physical age. In the opinion of this court, this contention of defendant has no application to this case. It is a well settled rule that when a minor has committed a tort with force, he is liable at any age. In such cases intention has no application. The *intent* controlling is the intent to complete the *physical act* and not the intent to produce the injurious conse- quences. 28 Ohio Jurisprudence 2d 583, Section 39.

In all his experience on the bench, this is the first time the writer of this opinion has felt the urge to indulge the philo- sophical. However, it will cause no harm to comment on the fact that all over our country there seems to prevail an idea in the minds of *"teenagers"* and *their parents,* that the teenager may go abroad, run amuck, enter on the property of his neigh- bors, commit every description of depredation, even to the burning down of houses, and there follows no liability if the conduct of the "teenager" is that of an infant of the same age, education and experience. This idea is wrong, legally and moral- ly. When both the parents and their "teenage" offspring realize this, we shall have taken an important step toward the eradication of juvenile delinquency.

The judgment below is reversed. The court below should have granted plaintiff's motion for a summary judgment. Fi- nal judgment is rendered in favor of plaintiff and against de- fendants for $6,837.50, with interest at six per cent per annum from the time of the payment of such sum to the Hunnicutts.

*Judgment reversed.*

HILDEBRANT, P. J., and HOVER, J., concur.